# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      **Plaintiff,**

v.                                                  Case No.  **8:09-cv-1046-T-30TGW**

WALL STREET COMMUNICATIONS,
INC., HOWARD A. SCALA, ROSS E.
BARALL, and DONALD R. MCKELVEY,

      **Defendants.**
_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment against Defendant Donald R. McKelvey ("McKelvey") (Dkt. 58), McKelvey's Response in Opposition to same (Dkt. 63), Plaintiff's Reply (Dkt. 78), McKelvey's Motion for Summary Judgment (Dkt. 75), Plaintiff's Response in Opposition to same (Dkt. 77), and McKelvey's Reply (Dkt. 82).  The Court, having reviewed the motions, responses, replies, record evidence, and being otherwise advised in the premises, concludes that Plaintiff's and McKelvey's Motions for Summary Judgments should be denied because there are genuine issues of material fact that preclude an entry of judgment, as a matter of law, in favor of either party.

## **INTRODUCTION**

This is a securities fraud case filed by Plaintiff, the Securities Exchange Commission (the "SEC"), against various defendants, including McKelvey.  The SEC claims that McKelvey, as President of Telco-Technology, Inc. ("Telco"), engaged in an illegal kickback scheme involving Telco stock.  The SEC believes that McKelvey directed Telco to issue millions of shares of its penny stock to Wall Street Communications, Inc. ("Wall Street"), by using Form S-8 registration statements that were purportedly compensation for consulting services performed by Howard Scala ("Scala"), the owner of Wall Street.  However, the SEC claims that Scala never performed any valid consulting services for Telco.  Rather, the SEC alleges that McKelvey and Scala engaged in a fraudulent kickback scheme.  The scheme involved Wall Street selling the Telco shares at Scala's direction soon after obtaining them from Telco, and then funneling half of the proceeds to McKelvey through another entity McKelvey founded and controlled, Donalson Capital Partners ("Donalson").

The SEC now moves for summary judgment on its claims against McKelvey, arguing that the record evidence is undisputed that he is liable for violating Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5.  The SEC asks the Court to enter an injunction permanently enjoining McKelvey from future violations of those laws, directing him to pay disgorgement, prejudgment interest, and a civil penalty, and imposing penny stock and officer-and-director bars against him.

McKelvey also moves for summary judgment.  McKelvey argues that there is no record evidence supporting the SEC's claims that he and Scala were involved in an illegal kickback scheme.  McKelvey claims that the record is clear that the Form S-8's were properly registered, and that the consulting arrangements between Scala and Telco and Donalson and Scala were valid.  McKelvey also argues that any punitive remedies are barred for conduct occurring before June 4, 2004, pursuant to the five-year statute of limitations contained in 28 U.S.C. §2462.

The Court concludes that the record is rife with material disputed facts preventing the entry of summary judgment in favor of either party.  It is entirely unclear in the record whether McKelvey and Scala were engaged in a fraudulent scheme, or, whether, they were indeed performing under valid consulting agreements.  The Court would have to make a credibility decision in order to rule in favor of either party, which would be inappropriate.  Thus, the SEC's claims against McKelvey must proceed to trial.

## RELEVANT FACTS

Telco was a telecommunications company involved in the reselling of long distance products, prepaid cards, long distance telephone services, and resale of hardware products such as printers, modems, and small computers.  During the relevant period of time, McKelvey ran Telco, and was its chief executive officer and president.  During the relevant period of time, McKelvey was also the head of Donalson, a consulting and capital placement firm.

Telco was never profitable while McKelvey was at the company.  According to McKelvey, in 2000, his attorneys recommended that Telco adopt a 2000 Consultant Compensation Plan.  One of the purposes of the plan was to enable Telco to offer registered common stock to consultants in lieu of cash payment.  Telco filed a Form S-8 registration statement that same year.  Form S-8 is available to register the offer and sale of securities to an issuer's employees and to consultants in certain circumstances.  According to McKelvey, his attorneys subsequently drafted a 2003 Consultant Compensation Plan and Forms S-8 were filed in April and December of 2003.

According to McKelvey, in 2003, Telco hired Scala to locate a suitable acquisition candidate for Telco and Telco paid him in S-8 stock pursuant to the Consultant Compensation Plans for that service.  According to McKelvey, Scala told him to issue the shares to his company, Wall Street.  Scala's pay was based on what he told McKelvey he was owed and McKelvey testified that he did not quibble over the requested amount.  The last payment to Wall Street was made on May 28, 2004.

During this same time, McKelvey claims that Donalson was retained by Scala to locate a suitable acquisition candidate for Scala's public shell company called Clean Water Technology, Inc.  Scala paid McKelvey and Donalson via checks for the consulting services and reimbursed McKelvey's expenses.

According to McKelvey, the consulting relationships worked well because Scala had many business contacts, including some in the telephone industry, that he introduced to Telco, and McKelvey had many contacts in the pharmaceutical industry that were of interest

to Scala.  McKelvey claims that the consulting arrangement between Telco and Wall Street/Scala and Wall Street/Scala and Donalson could have been pursuant to a written[1] or verbal agreement.

The record contains evidence that McKelvey and Scala traveled to China to locate companies that might be interested in acquiring Telco and Clean Water Technology.  The record reflects that Wall Street paid Donalson and McKelvey by check, not stock.  However, the majority of the checks issued from Wall Street's Bank of America account reflected Telco's stock symbol in the memo portion of the check.  McKelvey claims that he does not know why the checks were marked that way and that there was no agreement with Scala that involved Scala returning some of the proceeds from the sale of Telco stock to McKelvey or Donalson.

According to the SEC, during 2003 and 2004, McKelvey authorized Telco to issue approximately 8.6 million unrestricted shares of Telco stock to Wall Street pursuant to Form S-8 registration statements filed with the SEC as payment for its alleged consulting services.  The SEC relies on Wall Street's trading records, which reflect that it sold the S-8 stock for proceeds for approximately $557,000.  The SEC also relies on record evidence showing that during this same period of time, Wall Street wrote more than 30 checks totaling approximately $275,780 to Donalson.  A number of the checks contained Telco's ticker symbol in the memo section.  The last check issued to Donalson was on December 10, 2004.

---

[1] Although unclear in the record, it appears that McKelvey remembered a written agreement existing between the parties, but one has not been produced in this case.  He also testified that it was possible that the consulting arrangements were pursuant to verbal agreements.

According to the SEC, the timing of the transactions, i.e, the issuing of the S-8 stock to Wall Street, Wall Street's sale of the stock, and the subsequent payment of checks from Wall Street to Donalson, and the amount of stock transferred from Telco to Wall Street, make it clear that the compensation was pursuant to an illegal kickback scheme and not pursuant to any valid consulting agreement.

There has been no record evidence presented from either the SEC or McKelvey reflecting Scala's position on the validity of the consulting arrangements discussed herein, presumably, because Scala passed away on January 30, 2010.  However, Scala's Answer (Dkt. 20) denied that Wall Street and Telco had no formal consulting agreement.  Scala also denied that Wall Street did not perform the kinds of services for Telco that would allow it to legally receive S-8 shares (Dkt. 20).  Scala also denied that proceeds to Donalson originated from Wall Street's sale of Telco shares (Dkt. 20).

## DISCUSSION

### I.    Summary Judgment Standard of Review

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.  The evidence must be significantly probative to support the claims. *Anderson*,  477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).   However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.      The Parties' Motions for Summary Judgment

In order to establish a prima facie case for a violation of Section 5 of the Securities Act (count I of the complaint), the SEC must demonstrate that: (1) the defendant directly or indirectly sold or offered to sell securities; (2) through the use of interstate transportation or communication and the mails; (3) when no registration statement was in effect. *S.E.C. v. Calvo*, 378 F.3d 1211, 1214-15 (11th Cir. 2004).

The SEC moves for summary judgment, arguing, in part, that an improper use of Form S-8 does not accomplish Section 5 registration of such sales.  Specifically, the SEC states that the S-8 registration statements were invalid, because: (1) Telco issued the shares to an entity rather than a person; (2) Wall Street did not provide permissible services warranting receipt of these millions of shares; and (3) McKelvey financially benefitted from the S-8 shares.

McKelvey argues that he is entitled to summary judgment on this claim because the record is clear that the Form S-8's were pursuant to the 2000 and 2003 Consultant Compensation Plans, which were properly filed, and that the stock was issued for valid consulting services.  McKelvey also argues that Scala directed McKelvey to issue the stock to Wall Street and that Wall Street was the alter ego of Scala, which is an exception to the requirement that the stock be issued to a person.  Lastly, McKelvey claims that there is no record evidence supporting the SEC's argument that he financially benefitted from Wall Street's sale of the Telco stock.

The Court concludes that summary judgment cannot be granted in favor of either party because there are genuine issues of fact regarding whether the S-8 stock was issued for an

improper purpose.  Specifically, there are disputed facts regarding whether the Form S-8's were proper when filed and whether the 2000 and 2003 Consultant Compensation Plans were valid.  McKelvey testified that the stock was issued pursuant to the consulting agreement between Telco and Wall Street/Scala.  However, a jury could believe that the purported services were for Wall Street to sell the Telco shares soon after obtaining them and to funnel half of the proceeds to McKelvey through Donalson.  Also, there is a genuine issue of fact as to whether Wall Street was the alter ego of Scala, which would permit the issuance of the Form S-8 as compensation to Wall Street, assuming that the consulting services were for a valid purpose.

Accordingly, both parties' motions for summary judgment must be denied as to count I of the complaint.

For the same reasons, the parties' motions for summary judgment as to violations of Section 10(b), Rule 10b-5, and Section 17(a) (counts II, III, and IV of the complaint) must be denied.

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe. *SEC v. Zandford,* 535 U.S. 813, 819 (2002).  "Rule 10b-5, which implements this provision, forbids the use, 'in connection with the purchase or sale of any security,' of 'any device, scheme, or artifice to defraud' or any other 'act, practice or course of business' that 'operates ... as a fraud or deceit.'"   *Id. (quoting* 17 CFR §

240.10b-5).  Rule 10b-5 also proscribes, among other things, the making of any "untrue

statement of a material fact" or the omission of any material fact "necessary in order to make

the statements made, in light of the circumstances under which they were made, not

misleading."   17 CFR § 240.10b-5.   The scope of Rule 10b-5 is coextensive with the

coverage of Section 10(b), *Zandford* 535 U.S. at 816 n. 1, and therefore the Court will

generally use "Section 10(b)" to refer to both the statutory provision and the Rule.

   To state a claim for securities fraud under Section 10(b), a plaintiff must allege that

the defendant made material misstatements or omissions as to which he had a duty to speak,

or used a fraudulent device, with scienter, in connection with the purchase or sale of

securities.  *See S.E.C. v. Roanoke Technology Corp.*, 2006 WL 3813755 at *2 -3(M.D. Fla.

Dec. 26, 2006) (*citing SEC v. Monarch Funding Corp.,* 192 F.3d 295, 308 (2d Cir. 1999);

*Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir. 1989)).

   Section 17(a) of the Securities Act of 1933 provides that:

   It shall be unlawful for any person in the offer or sale of any securities ... by the use
   of any means or instruments of transportation or communication in interstate
   commerce or by use of the mails, directly or indirectly

   (1) to employ any device, scheme, or artifice to defraud, or
   (2) to obtain money or property by means of any untrue statement of a material fact
   or any omission to state a material fact necessary in order to make the statements
   made, in light of the circumstances under which they were made, not misleading; or
   (3) to engage in any transaction, practice, or course of business which operates or
   would operate as a fraud or deceit upon the purchaser.

A claim under Section 17(a) of the Securities Act requires essentially the same elements as a claim under Section 10(b) and Rule 10b-5, except that there is no scienter requirement for claims under Section 17(a)(2) or (3). *Monarch Funding*, 192 F.3d at 308.

As set forth herein, there are disputed facts regarding whether McKelvey made misrepresentations and omissions and engaged in a fraudulent kickback scheme. The SEC argues that the consulting arrangement between Telco and Wall Street was a sham, however, there is record evidence supporting McKelvey's contention that there was one consulting arrangement between Telco and Scala and another consulting arrangement between Donalson and Scala. McKelvey also points to the fact that the SEC has no evidence that the Bank of America funds paid to Donalson and McKelvey derived from Telco stock sales. The record reflects that all of the Telco stock sold by Wall Street generated proceeds that were swept into a money market account and there is no evidence showing any transfer of funds from the money market account to Wall Street's Bank of America account, or to McKelvey, Donalson, or Telco.

Thus, given the number of disputed facts in the record, summary judgment cannot be granted in favor of either party as to the remaining counts of the complaint.

Lastly, because there are disputed facts in the record as to whether McKelvey committed a fraud and/or as to whether there was a continuing scheme to engage in an illegal kickback arrangement, the Court cannot conclude, as a matter of law, that the five-year statute of limitations bars any of the SEC's claims for punitive relief. If the jury finds that McKelvey did engage in fraud and that the fraud was a continuing violation, any claim for

a civil penalty could be subject to tolling.  *See S.E.C. v. Kelly*, 663 F. Supp. 2d 276, 288

(S.D.N.Y. 2009); *S.E.C. v. Des Champs,* 2009 WL 3068258 (D. Nev. Sept. 21, 2009).  The

Court does conclude, however, that any equitable remedy is not subject to the five-year

statute of limitations.  *See S.E.C. v. Kirkland*, 521 F. Supp. 2d 1281, 1306 (M.D. Fla. 2007).

It is therefore ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion for Summary Judgment against Defendant Donald R.
      McKelvey (Dkt. 58) is hereby DENIED.

2.    McKelvey's Motion for Summary Judgment (Dkt. 75) is hereby DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 10, 2010.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-1046.msjsfinalfinal.wpd